R. Joseph Trojan  CA Bar No. 137,067
trojan@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone:   310-777-8399
Facsimile:   310-777-8348

Attorneys for Plaintiff,
HIGHLAND PLASTICS, INC.

FILED
CLERK, U.S. DISTRICT COURT

MAR 1 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                       DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

HIGHLAND PLASTICS, INC., a
California corporation,

            Plaintiff,

      v.

SORENSEN RESEARCH &
DEVELOPMENT TRUST,

            Defendant.

CASE NO. CV11 02246 SJO (DTBx)

**COMPLAINT FOR
DECLARATORY RELIEF;
DEMAND FOR JURY TRIAL**

//

//

//

//

//

//

//

TROJAN LAW OFFICES
Beverly Hills

**COMPLAINT**                               -1-

Plaintiff HIGHLAND PLASTICS, INC. ("Highland Plastics") hereby complains against Defendant SORENSEN RESEARCH & DEVELOPMENT (hereinafter "Sorensen") as follows:

1.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq.*

## I. **THE PARTIES**

2.     Highland Plastics is a corporation organized and existing under the laws of the State of California, with its principal place of business at 3650 Dulles Drive, Mira Loma, California 91752.

3.     Upon information and belief, Defendant is a Trust with its principal place of business at 9930 Mesa Rim Road, Suite 300, San Diego, California 92121.

## II. **JURISDICTION AND VENUE**

4.     This is an action for declaratory judgment under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., and the Declaratory Judgment Action, 28 U.S.C. §§ 2201-2202.

5.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has personal jurisdiction over Defendant because it conducts business in the State of California and within the Central District.

7.     Venue properly lies in the Central District of California pursuant to 28 U.S.C. §1391 and §1400, because the acts complained of herein have been committed in this Judicial District and Defendant is subject to personal jurisdiction within the Judicial District and the Plaintiff has its principal place of business within the Judicial District.

## III. **FACTUAL BACKGROUND**

8.     On February 21, 2011, Defendant sent a cease and desist letter to John Clearman, president of Clearman Galley et al. (hereinafter "Clearman"), accusing

COMPLAINT                    -2-

TROJAN LAW OFFICES
BEVERLY HILLS

Clearman of infringing claims of United States Patent No. 6,599,460 (the "'460 patent"). *See* Exhibits A&B. Specifically, Defendant accused Clearman of selling Original Spread Container Lids that infringe a method of injection molding claimed by the '460 patent. Highland Plastics is the manufacturer of the accused lids. Defendant alleged in its cease-and-desist letter that it has provided detailed information of the alleged infringing activities as to establish a substantial likelihood of infringement. Since 2003, Defendant ranks sixth as the most patent litigious entity, suing 73 times on patents that Defendant Sorensen does not practice.

9.     In its cease and desist letter, Defendant stated, "we have determined that the structure of the above referenced products meets the claim limitations of [the '460 patent]." *See* Exhibit B. Defendant's letter included such threatening statements as:

- "CLEARMAN must obtain a license and release under the '460 patent for the products it imported into, manufactured, offered for sale and/or sold within the United States";

- "This letter constitutes a notice of patent infringement in violation of 35 U.S.C. § 271";

- "CLEARMAN is ultimately responsible for infringement of the '460 patent in making, importing, offering for sale or selling its products and components";

- "failure to license its usage of the '460 patented technology can only lead to the risk and expense of litigation, an award of damages, and attorneys fees." *Id.*

10.     Upon being threatened with suit, Clearman referred the matter to Highland Plastics, the manufacturer of the accused lids. Counsel for Highland Plastics promptly responded to Sorensen's cease-and-desist letter by explaining that

COMPLAINT                                    -3-

TROJAN LAW OFFICES
BEVERLY HILLS

the mold for the Clearman Original Spread Container Lid that is accused of infringing the '460 patent was first designed in 1975, more than 25 years before the '460 patent issued in 2003. *See* Exhibit C. Production of the lid began in 1977 at Highland's United States facilities and has been continuously sold for the past 33 years. *Id.* The mold and methods of operation have been on public display during that entire time. *Id.* Highland Plastics does not keep its manufacturing processes or its facilities secret. *Id.* In fact, the company strongly encourages tours of its facilities by its customers and, at times, even its competitors. *Id.* None of the tour guests are asked to sign any non-disclosure agreement of any kind. *Id.* Since the molds and manufacturing methods used by Highland Plastics have been on public display for over 33 years, if Sorensen's allegation of infringement were true, it would mean that the '460 patent is invalid as being anticipated and/or obvious under 35 U.S.C. §§ 102-103.

11.   In a follow-up letter to counsel for Highland Plastics, Sorensen ignored the facts presented by Highland Plastics, dismissing them as attorney arguments, and further threatened, "it appears that your client is unwilling to settle this matter amicably and avoid litigation. Therefore, please confirm you are authorized to accept service of process on behalf of HIGHLAND". *See* Exhibit D. Additionally, Sorenson warned, "Sorensen R&D has extensively litigated several of its patents with companies such as DaimlerChrysler, Black & Decker, and BMW…We suggest that HIGHLAND does not make the same expensive mistakes that those who have elected litigation have made." *Id.* The facts alleged herein, under all the circumstances, show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

12.   To establish that the Clearman Original Spread Container Lid has been in existence more than 25 years before the issuance of the '460 patent, Highland Plastics provided the declaration of its president, which averred that the lid was first

COMPLAINT                                        -4-

designed in 1975 and has been continuously sold since 1977. *See* Exhibit E. The declaration averred that the mold and methods of operation have been on public display during that entire time. *Id.* In addition, Highland Plastics provided to Sorensen true and correct copies of drawings of the lid and of the mold for the lid from 1975. *Id.* Sorensen was also invited to inspect a physical sample of a lid made from a mold (no. 67) that was cast in 1976. *See* Exhibit F.

13. Highland Plastics also provided a detailed explanation to Sorensen of why the lid does not infringe asserted claim 1 of the '460 patent. *See* Exhibit F. Claim 1 recites, in relevant part, that the injection-molding method requires "two opposed flow chambers…for directing injected fluid plastic material from exit positions of the said at least two opposed flow chambers into corresponding entrance positions of the at least one thin-wall cavity section to thereby form at least one thin-wall portion of the product…" *See* Exhibit A (7:11-18). Highland Plastics provided a declaration averring that the ribs on the rim portion of the lid are not "flow chambers." *See* Exhibit D. The ribs merely function to reinforce and strengthen the rim portion so as to facilitate the lid's ability to engage a corresponding container. *Id.*

14. Further, Highland Plastics explained that the lid also does not have a "thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, with said increase being at less than a threshold rate to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone." *See* Exhibit A (7:30-36), F. Highland Plastics provided drawings to Sorensen that clearly show that the portion of the lid that is alleged to be the "thin-wall cavity section" is of substantially uniform thickness. *See* Exhibit E. It does not increase in thickness. Therefore, there is no infringement, either literally or under the doctrine of equivalents, of the '460 patent.

COMPLAINT                                           -5-

15. Defendant, a patent troll, has failed to withdraw its threats against Highland Plastics, notwithstanding the facts recited in ¶¶ 8-14. Given that Highland Plastics has been making the accused lid in the same non-infringing manner for more than 25 years before the '460 patent even issued, if Sorensen does not default on this complaint, it should be sanctioned under Federal Rules of Civil Procedure, Rule 11, which requires in relevant part that a pleading or other paper "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and "the claims, defenses, and other legal contentions are warranted by existing law ..." This case also qualifies as an "exceptional case" under 35 U.S.C. § 285, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

## IV. **FIRST CLAIM FOR RELIEF**
### **(Declaratory Judgment of Noninfringement)**

16. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 15.

17. Plaintiff is informed and believes and thereon alleges that Sorensen is the owner of the '460 patent, issued on July 29, 2003 and entitled "Prevention of Void-Based-Irregularity Formation in Thin-Wall, Injection-Molded Plastic Product," attached hereto as Exhibit A,

18. Highland Plastics makes, offers for sale, and sells plastic container lids that have been accused of infringing the '460 patent.

19. Based on Sorensent's conduct, Highland Plastics believes, in good faith, that Sorensen will commence suit against Highland Plastics and/or its customers, including Clearman. Because Highland Plastics provides the container lids that Sorensen claims infringe the '460 patent, there is a substantial, continuing, and justiciable controversy between Highland Plastics, on the one hand, and

TROJAN LAW OFFICES
BEVERLY HILLS

Sorensen, on the other hand, relating to the purported infringement of the '460 patent.

20.  No claim of the '460 patent can be validly construed to be infringed by any product made or sold by Highland Plastics.  Highland Plastics has not directly, indirectly, or contributorily infringed, or actively induced infringement of, any claim of the patent or otherwise violated Defendant's rights under such patent.

21.  Any claim of patent infringement by Sorensen is barred in whole or in part by laches, waiver, estoppel, and acquiescence due to its inaction in timely asserting the patent.

22.  Accordingly, Highland Plastics is entitled to a declaratory judgment that it does not infringe any claim of the '460 patent.

## V.  SECOND CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity and Unenforceability)

23.  Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 22.

24.  Highland Plastics has been making the accused lids since at least 1977.

25.  One or more claims of the '640 patent are invalid for failure to meet one or more of the requirements of Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 102 and 103.

26.  Sorensen is estoppled from asserting any claim of patent infringement by reason that the patent is unenforceable due to unclean hands.

27.  Accordingly, Highland Plastics is entitled to a declaratory judgment that the claims of the '460 patent are invalid and unenforceable.

## VI. DEMAND FOR JURY TRIAL

28.  Plaintiff hereby exercises its right to a jury trial under the Seventh Amendment to the United States Constitution, and pursuant to Fed. R. Civ. Proc., Rule 38, demands a jury trial in accordance therewith.

COMPLAINT                                        -7-

# VII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

a.     A declaration that Plaintiff has not and does not infringe, under any theory, any claim of the '460 patent;

b.     A declaration that the claims of the '460 patent are invalid and/or unenforceable;

c.     A judgment that Plaintiff is the prevailing party in this action and an award for costs and attorney fees incurred in this action;

d.     Any and all other relief that the Court deems proper.

                                    Respectfully submitted,

                                    TROJAN LAW OFFICES

                                    by

Dated: March 16, 2011

                                    R. Joseph Trojan
                                    Attorney for Plaintiff,
                                    HIGHLAND PLASTICS, INC.

**COMPLAINT**                                    -8-

# EXHIBIT A

US006599460B1

(12) **United States Patent**
Brown et al.

(10) Patent No.: **US 6,599,460 B1**
(45) Date of Patent: **Jul. 29, 2003**

(54) **PREVENTION OF VOID-BASED-IRREGULARITY FORMATION IN THIN-WALL, INJECTION-MOLDED PLASTIC PRODUCT**

(75) Inventors: **Paul Philip Brown**, San Diego, CA (US); **Jens Ole Sorensen**, Grand Cayman (KY)

(73) Assignee: **Sorensen Research and Develpoment Trust**, San Diego, CA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 282 days.

(21) Appl. No.: **09/608,923**

(22) Filed: **Jul. 3, 2000**

(51) Int. Cl.$^7$ ................................................. **B29C 45/00**
(52) U.S. Cl. ................. **264/328.12**; 249/144; 425/577; 220/671; 220/675
(58) Field of Search ......................... 264/328.1, 328.12; 220/675, 671; 425/577; 249/142, 144

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,532,291 A | * | 10/1970 | Newman ............... 242/118.31 |
| 3,679,119 A | | 7/1972 | Copping |
| 3,944,124 A | | 3/1976 | Hexel |
| 4,117,950 A | * | 10/1978 | Allen ......................... 220/782 |
| 4,140,828 A | | 2/1979 | Copping |
| 4,467,994 A | | 8/1984 | Sorensen |
| 4,519,557 A | * | 5/1985 | Newman .................... 220/675 |
| 4,622,002 A | | 11/1986 | Bormuth |
| 4,657,141 A | | 4/1987 | Sorensen |
| 4,743,420 A | | 5/1988 | Dutt |
| 4,789,326 A | | 12/1988 | Sorensen |
| 4,807,775 A | | 2/1989 | Sorensen |
| 4,844,405 A | | 7/1989 | Sorensen |
| 4,935,188 A | | 6/1990 | Sorensen |
| 4,959,005 A | | 9/1990 | Sorensen |
| 4,960,557 A | | 10/1990 | Sorensen |
| 5,008,064 A | | 4/1991 | Sorensen |
| 5,045,268 A | | 9/1991 | Sorensen |
| 5,145,630 A | | 9/1992 | Schad |
| 5,149,482 A | | 9/1992 | Sorensen |
| 5,262,112 A | | 11/1993 | Sorensen |
| 5,839,603 A | * | 11/1998 | Smith et al. ................ 220/380 |
| 5,858,286 A | | 1/1999 | Brown et al. |
| 5,879,613 A | | 3/1999 | Brown et al. |
| 6,003,720 A | * | 12/1999 | Morimoto et al. .......... 220/608 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 362 648 A2 | 4/1990 |
| EP | 0 599 009 A1 | 6/1994 |
| JP | 53-21256 | 2/1978 |
| JP | 54-22481 | 2/1979 |
| JP | 54-148082 | 11/1979 |

* cited by examiner

*Primary Examiner*—Jill L. Heitbrink
(74) *Attorney, Agent, or Firm*—Edward W. Callan

(57) **ABSTRACT**

During injection molding of a thin-wall plastic product, such as a drink cup, the formation of void-based irregularities is prevented in a thin-wall portion of the product formed within a zone of a thin-wall cavity section that is located between adjoining flow chambers, in which zone the thickness of the thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining such zone. Such void-based irregularity formation is prevented by dimensioning the mold cavity so that the thickness increases in such direction at less than a threshold rate. The flow chambers do not extend to a rim portion of the thin-wall cavity section; and the respective inscribed-sphere dimensions of the adjoining flow chambers within a terminal zone of the thin-wall cavity section adjacent a rim portion of the mold cavity are less than the respective inscribed-sphere dimensions of upstream portions of the adjoining flow chambers.

**34 Claims, 3 Drawing Sheets**





**FIG.1**



**FIG.2**



**FIG.3**



FIG.4

FIG.4A

FIG.5

FIG.6A



**FIG.6B**



**FIG.6C**



**FIG.7**

US 6,599,460 B1

**1**

### PREVENTION OF VOID-BASED-IRREGULARITY FORMATION IN THIN-WALL, INJECTION-MOLDED PLASTIC PRODUCT

### BACKGROUND AND SUMMARY OF THE INVENTION

The present invention generally pertains to injection molding of thin-wall plastic products and is particularly directed to preventing the formation of void-based irregularities in thin-wall portions of such products.

Some thin-wall plastic products are injection molded by using a mold cavity that includes flow chambers for directing injected fluid plastic material into thin-wall cavity sections located between the flow chambers to thereby form the thin-wall portions of the product.

For some products, it is desired to increase the thickness of the thin-cavity section in the general direction of flow within the flow chambers adjoining said zone. However, when such thickness is so increased, void-based irregularities sometimes occur in a thin-wall portion of the product that is formed by fluid plastic material directed into a zone of the thin-wall cavity section that is located between opposed flow chambers adjoining such zone because the injected fluid plastic material that is directed into such zone may surround one or more gaseous voids within such zone during the formation of the product, as shown in FIG. 1.

FIG. 1 illustrates a sequential flow-front pattern of directed plastic material within a region of a thin-wall cavity section **10** adjacent the downstream extremities of a pair of opposed flow chambers **12**. The sequential flow-front pattern was determined by injecting different quantities of fluid plastic material into the flow chambers **12** and recording the extent of the resultant flow of such material directed into the thin-wall cavity section for each injection. It is seen that within a zone of the thin-wall cavity section **10** that is located between the flow chambers **12** the injected fluid plastic material that is directed into the thin-wall cavity section **10** surrounds a gaseous void **14** during the formation of the product. Consequently the thin-wall of the product includes an irregularity in the portion thereof that is formed in the zone of the thin-wall cavity section **12** in which the void **14** was surrounded by the directed fluid plastic material during the formation of the product. Such an irregularity may be manifested as a hole and/or a fragile and/or miscolored wall in such portion of the product. When the product is a container, such as a drink cup, a hole in the wall will enable fluid to leak from the container.

We have discovered that the formation of such void-based irregularities in the thin-wall portion of the product can be prevented within the zone of the thin-wall cavity section that is located between the flow chambers in which the thickness of the thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone by dimensioning the mold cavity so that said thickness increases in said direction at a rate that equals or exceeds the threshold rate, such void-based irregularities usually occur. The threshold rate for a zone is determined empirically for each product, as described below in relation to the detailed description of the preferred embodiments.

The present invention provides a mold for injection-molding a product that includes at least one thin wall, comprising: a plurality of mold parts, which when combined define a mold cavity for forming the product and at least one

**2**

gate from which fluid plastic material may be injected into the mold cavity; wherein the mold cavity includes at least one thin-wall cavity section and at least two opposed flow chambers that adjoin opposite edges of the thin-wall cavity section for directing injected fluid plastic material from exit positions of the said at least two opposed flow chambers into corresponding entrance positions of the thin-wall cavity section to thereby form at least one thin-wall portion of the product; wherein the at least one thin-wall cavity section includes at least one zone that is located between said at least two opposed flow a chambers; wherein within the at least one zone inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber; and wherein within the at least one zone once the thickness of the at least one thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, with said increase being at less than a threshold rate to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone. "Inscribed-sphere dimensions" are those dimensions in which a sphere can be fitted.

The present invention also provides a method of injection-molding a product that includes at least one thin wall, comprising the steps of:

(a) combining a plurality of mold parts to define a mold cavity for forming the product and at least one gate from which fluid plastic material may be injected into the mold cavity, wherein the mold cavity includes at least one thin-wall cavity section and at least two opposed flow chambers that adjoin opposite edges of the thin-wall cavity section for directing injected fluid plastic material from exit positions of the said at least two opposed flow chambers into corresponding entrance positions of the at least one thin-wall cavity section to thereby form at least one thin-wall portion of the product, wherein the at least one thin-wall cavity section includes at least one zone that is located between said at least two opposed flow chambers, and wherein within the at least one zone inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber; and

(b) injecting fluid plastic material from the gate into the mold cavity to form the product;

wherein step (a) comprises combining mold parts that define a said mold cavity in which within said at least one zone of the at least one thin-wall cavity section the thickness of the at least one thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, with said increase being at less than a threshold rate to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone.

Additional features of the present invention are described with reference to the detailed description of the preferred embodiments.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 illustrates a sequential flow-front pattern of directed plastic material within a region of a thin-wall cavity section in which a void is surrounded by such material during the formation of a thin-wall portion of a product within the thin-wall cavity section.

**3**

FIG. 2 shows exemplary dimensions of a preferred embodiment of a thin-wall cavity section defined by a mold according to the present invention. FIG. 2 is drawn approximately to scale.

FIG. 3 illustrates a sequential flow-front pattern of directed plastic material within the thin-wall cavity section shown in FIG. 2.

FIG. 4 is a perspective view of a drink-cup product injected molded in the mold of the present invention.

FIG. 4A is a perspective view of a portion of the product of FIG. 4 that is formed during an empirical determination of whether the rate of increase of the thickness of a thin-wall cavity section is below the threshold rate at which void-based irregularity formation is consistently prevented.

FIG. 5 is a sectional view of a mold in which the mold parts define a cavity section for molding the drink-cup product shown in FIG. 4.

FIG. 6A is a sectional view illustrating the respective inscribed-sphere dimensions in one embodiment of the mold cavity at an entrance position of a thin-wall cavity section and a corresponding exit position of an adjoining flow chamber, as seen along lines 6—6 in FIG. 2.

FIG. 6B is a sectional view illustrating the respective inscribed-sphere dimensions in another embodiment of the mold cavity at an entrance position of a thin-wall cavity section and a corresponding exit position of an adjoining flow chamber, as seen approximately along lines 6—6 in FIG. 2.

FIG. 6C is a sectional view illustrating the respective inscribed-sphere dimensions in still another embodiment of the mold cavity at an entrance position of a thin-wall cavity section and a corresponding exit position of an adjoining flow chamber, as seen approximately along lines 6—6 in FIG. 2.

FIG. 7 is a sectional view illustrating the respective inscribed-sphere dimensions in an embodiment of the mold cavity at an entrance position of a thin-wall cavity section and a corresponding exit position of an adjoining flow chamber near the downstream extremity of the flow chamber, as seen along lines 7—7 in FIG. 2.

### DETAILED DESCRIPTION

Referring to FIG. 2, a preferred embodiment of a mold cavity defined by a mold according to the present invention includes a thin-wall cavity section 20 and a pair of opposing flow chambers 21 adjoining opposite sides of the cavity section 20 for directing fluid plastic material from exit positions of the two opposed flow chambers 21 into corresponding entrance positions of the thin-wall cavity section 20 to thereby form a thin-wall portion of an injection molded product. The pair of opposing flow chambers 21 extend from a feeding flow chamber 22 that is coupled to a gate 23 defined by the mold.

An exemplary preferred embodiment of a thin-wall cavity section 20 for forming a thin-wall portion of an injection molded plastic product is dimensioned as shown in FIG. 2. The material used for this exemplary embodiment was polypropylene. The thin-wall cavity section 20 includes an initial zone 24, a first intermediate zone 25, a second intermediate zone 26 and a terminal zone 27. The terminal zone 27 extends to a rim portion 28 of the mold cavity at which a rim of a thin-wall portion of a product is formed. The dividing line between the initial zone 24 and the first intermediate zone 25 is 90.35 mm. from the gate 23. The dividing line between the first intermediate zone 25 and a

**4**

second intermediate zone 26 is 111.76 mm. from the gate 23. The dividing line between the second intermediate zone 26 and the terminal zone 27 is 122.94 mm. from the gate 23. The initial zone 24, the first intermediate zone 25 and the second intermediate zone 26 are located completely between the pair of opposing flow chambers 21. Neither of the pair of opposing flow chambers 21 extends to the rim portion 28, whereby a substantial portion of the terminal zone 27 is not located between the opposing pair of flow chambers 21. The prevention of formation of void-based irregularities in the terminal zone 27 is enhanced by not extending either of the pair of opposing flow chambers 21 to the rim portion 28.

The formation of void-based irregularities in the terminal zone 27 beyond the downstream extremities of the flow chambers 21 may not be a problem when they occur very close to a rim portion 28.

In the initial zone 24, the thin-wall cavity section 20 has a uniform thickness of 0.15 mm. In the first intermediate zone 25, the thickness of the at least one thin-wall cavity section 20 increases in the general direction of flow within the flow chambers 21 adjoining the first intermediate zone 25 at a rate of 0.0035. In the second intermediate zone 26, the thickness of the at least one thin-wall cavity section 20 increases in the general direction of flow within the flow chambers 21 adjoining the second intermediate zone 26 at a rate of 0.0066. In the terminal zone 27, the thickness of the at least one thin-wall cavity section 20 increases in the general direction of flow within the flow chambers 21 closest to the terminal zone 27 at a rate of 0.0316. Each of the opposing flow chambers 21 adjoining the initial zone 24, the first intermediate zone 25 and the second intermediate zone 26 has a diameter of 0.85 mm. Approaching the downstream extremities of the opposed flow chambers 21, the respective inscribed-sphere dimensions of the flow chambers 21 are less than the respective inscribed-sphere dimensions of upstream portions of the adjoining flow chambers 21. Such decrease in the respective inscribed-sphere dimensions of the flow chamber 21 further enhances prevention of formation of void-based irregularities in the terminal zone 27.

Referring to FIG. 3, which illustrates a sequential flow-front pattern of directed plastic material within the thin-wall cavity section shown in FIG. 2, it is seen that the injected fluid plastic material that is directed into the thin-wall cavity section 20 does not at any time surround any gaseous void within any zone of the thin-wall section 20 that is located between the pair of opposing flow chambers 21 (including zones 24, 25, 26 and the portion of zone 27 that is located between the opposing flow chambers 21).

A drink cup 40, as shown in FIG. 4, having a plurality of thin-wall portions 42 was injection molded by the method of the present invention in a mold 44 according to the present invention, as shown in FIG. 5. The mold 44 includes a plurality of mold parts 45, 46, which when combined define a mold cavity 48 for forming the drink-cup 40 and a gate 50 from which fluid plastic material is injected into the mold cavity 48. The mold cavity 48 includes a plurality of thin-wall cavity sections 20, as shown in FIG. 2, and a plurality of adjoining opposed flow chambers 21 at opposite edges of each thin-wall cavity section 20. The thin-wall portions 42 of the drink cup 40 are formed in the thin-wall cavity sections 20. The drink cup 40 also includes ridges 52, which are formed in the flow chambers 21 of the mold cavity 48. The ridges 52 do not extend to a rim 54 of the cup 40. Each thin-wall cavity section 20 of the mold cavity 48 includes an initial zone 24, a first intermediate zone 25, a second intermediate zone 26 and a terminal zone 27, which

5

are located and dimensioned as described above with reference to FIG. 2.

The threshold rate of increase in the thickness of the thin-wall cavity section 20 within each of the first intermediate zone 25, the second intermediate zone 26 and the terminal zone 27 below which void-based irregularity formation between the adjoining flow chambers 21 is prevented within all such zones 25, 26, 27 was determined empirically by injection molding test strips generally corresponding to an individual common thin-wall portion 42 of the drink cup 40, with different quantities of fluid plastic material being injected into a mold cavity, such as shown in FIG. 2, in which the rate of increase in the thickness is varied for each such zone 25, 26, 27 separately, and observing the respective rates of increase of the thickness within each zone 25, 26, 27 at which void-based irregularity formation is or is not prevented.

The dimensions of the mold cavity 48 were initially selected in accordance with such test-strip determinations. Partial test products 56, such as shown in FIG. 4A, were then injected molded with different quantities of fluid plastic material being injected into the mold cavity 48 to determine whether the respective rates of increase of the thickness within each of the first intermediate zone 25, the second intermediate zone 26 and the terminal zone 27 of the thin-wall cavity section 20 that were determined by observing the test strips were such that void-based irregularity formation between the adjoining flow chambers 21 in each of the zones 25, 26, 27 was consistently prevented. When observation of the partial test products 56 reveals that void-based irregularity formation is not consistently prevented, the rate of increase in the thickness is reduced in the zone or zones in which void-based irregularity formation is not consistently prevented, and further test strips and partial test products 56 are injection molded for further observation.

FIGS. 6A, 6B and 6C illustrate the respective inscribed-sphere dimensions at an entrance position of a thin-wall cavity section and a corresponding exit position of an adjoining flow chamber in three alternative embodiments of the mold cavity 48.

In the mold cavity of FIG. 6A, the entrance position 60a of the thin-wall cavity section 20a is of approximately uniform thickness in a direction normal to the direction of flow within the adjoining flow chamber 21a; the cross-section of the flow chamber 21a is circular in the direction normal to the direction of flow within the flow chamber 21a; and here is a sharp transition between the exit position 62a of the flow chamber 21a and the entrance position 60a of the thin-wall cavity section 20a. Injected fluid plastic material is directed from the exit position 62a of the flow chamber 21a into the corresponding entrance position 60a of the thin-wall cavity section 20a; and the inscribed-sphere dimension 64a at the entrance position 60a is smaller than the inscribed-sphere dimension 66a at the corresponding exit position 62a of the adjoining flow chamber 21a.

In the mold cavity of FIG. 6B, the entrance position 60b of the thin-wall cavity section 20b is of approximately uniform thickness in a direction normal to the direction of flow within the adjoining flow chamber 21b; the cross-section of the flow chamber 21b is oval in the direction normal to the direction of flow within the flow chamber 21a; and there is a tapered transition between the exit position 62b of the flow chamber 21b and the entrance position 60b of the thin-wall cavity section 20b. Injected fluid plastic material is directed from the exit position 62b of the flow

6

chamber 21b into the corresponding entrance position 60b of the thin-wall cavity section 20b; and the inscribed-sphere dimension 64b at the entrance position 60b is smaller than the inscribed-sphere dimension 66b at the corresponding exit position 62b of the adjoining flow chamber 21b.

In the mold cavity of FIG. 6C, the thickness of the entrance position 60c of the thin-wall cavity section 20c decreases in a direction away from and normal to the direction of flow within the adjoining flow chamber 21c. Injected fluid plastic material is directed from the exit position 62c of the flow chamber 21c into the corresponding entrance position 60c of the thin-wall cavity section 20c; and the inscribed-sphere dimension 64c at the entrance position 60c is smaller than the inscribed-sphere dimension 66c at the corresponding exit position 62c of the adjoining flow chamber 21c.

FIG. 7 illustrates the respective inscribed-sphere dimensions at an entrance position 60a of the thin-wall cavity section 20a and a corresponding exit position 62a of the adjoining flow chamber 21a near the downstream extremity of the flow chamber 21a in an embodiment of the mold cavity corresponding to that shown in FIG. 6A. The entrance position 60a of the thin-wall cavity section 20a is of approximately uniform thickness in a direction normal to the direction of flow within the adjoining flow chamber 21a; the cross-section of the flow chamber 21a, (which resides within the generally concave surface of the mold cavity 48) is semicircular in the direction normal to the direction of flow within the flow chamber 21a; the flow chamber 21a has a smaller inscribed-sphere dimension than in the upstream portion of the flow chamber 21a shown in FIG. 6A; and there is a sharp transition between the exit position 62a of the flow chamber 21a and the entrance position 60a of the thin-wall cavity section 20a. Injected fluid plastic material is directed from the exit position 62a of the flow chamber 21a into the corresponding entrance position 60a of the thin-wall cavity section 20a; and the inscribed-sphere dimension 64a at the entrance position 60a is smaller than the inscribed-sphere dimension 68a at the corresponding exit position 62a of the adjoining flow chamber 21a.

In additional alternative embodiments (not shown), (a) at least one of the adjoining flow chambers does not extend from the gate either directly or via one or more connected intervening flow chambers; (b) the direction of flow within an elongated flow chamber is not necessarily lengthwise; (c) opposed flow chambers do not necessarily direct fluid plastic material toward a common position between the opposed flow chambers; (d) flow chambers may be curved and/or shaped in any manner; (e) thin-wall cavity sections need not be relatively flat or conical; (f) a thin-wall cavity section may be interposed between at least one flow chamber and the gate; and (g) mold chambers, such as described in U.S. Pat. No. 4,844,405, may be disposed within the thin cavity region between the opposed adjoining flow chambers to further enhance prevention of formation of void-based irregularities in those zones of the thin-wall section 20 that are located between the pair of opposing flow chambers 21.

The advantages specifically stated herein do not necessarily apply to every conceivable embodiment of the present invention. Further, such stated advantages of the present invention are only examples and should not be construed as the only advantages of the present invention.

While the above description contains many specificities, these should not be construed as limitations on the scope of the present invention, but rather as examples of the preferred embodiments described herein. Other variations are possible

US 6,599,460 B1

7

and the scope of the present invention should be determined not by the embodiments described herein but rather by the claims and their legal equivalents.

We claim:

1. A method of injection-molding a product that includes at least one thin wall, comprising the steps of:

(a) combining a plurality of mold parts to define a mold cavity for forming the product and at least one gate from which fluid plastic material may be injected into the mold cavity, wherein the mold cavity includes at least one thin-wall cavity section and at least two opposed flow chambers that adjoin opposite edges of the thin-wall cavity section for directing injected fluid plastic material from exit positions of the said at least two opposed flow chambers into corresponding entrance positions of the at least one thin-wall cavity section to thereby form at least one thin-wall portion of the product, wherein the at least one thin-wall cavity section includes at least one zone that is located between said at least two opposed flow chambers, and wherein within the at least one zone inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber; and

(b) injecting fluid plastic material from the gate into the mold cavity to form the product;

wherein step (a) comprises combining mold parts that define a said mold cavity in which within said at least one zone of the at least one thin-wall cavity section the thickness of the at least one thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, with said increase being at least than a threshold rate to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone.

2. A method according to claim 1, wherein the mold cavity includes a plurality of said thin-wall cavity sections and a plurality of said adjoining at least two opposed flow chambers at opposite edges of each thin-wall cavity section; and

wherein each thin-wall cavity section includes at least one said zone located between the adjoining at least two opposed flow chambers, in which inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber; and in which the thickness of the thin-wall cavity section increases in the direction of flow within the adjoining flow chambers at less than said threshold rate.

3. A method according to claim 2, wherein the mold cavity defines a hollow product.

4. A method according to claim 3, wherein the mold cavity defines a drink cup.

5. A method according to claim 2, wherein each at least one thin-wall cavity section extends to a rim portion of the mold cavity in which a rim of the product is formed, and

wherein none of at least two opposed flow chambers adjoining the at least one thin-wall cavity section extend to the rim portion.

6. A method according to claim 5, wherein within a terminal zone of the at least one thin-wall cavity section adjacent the rim portion of the mold cavity, the respective inscribed-sphere dimension of the adjoining flow chambers are less than the respective inscribed-sphere dimension of upstream portions of the adjoining flow chambers.

7. A method according to claim 2, wherein within a terminal zone of the at least one thin-wall cavity section

8

adjacent a rim portion of the mold cavity in which a rim of the product is formed, the respective inscribed-sphere dimension of the adjoining flow chambers are less than the respective inscribed-sphere dimension of upstream portions of the adjoining flow chambers.

8. A method according to claim 1, wherein within a terminal zone of the at least one thin-wall cavity section adjacent a rim portion of the mold cavity in which a rim of the product is formed, the respective inscribed-sphere dimension of the adjoining flow chambers are less than the respective inscribed-sphere dimension of upstream portions of the adjoining flow chambers.

9. A method according to claim 1, wherein each at least one thin-wall cavity section extends to a rim portion of the mold cavity in which a rim of the product is formed, and

wherein none of at least two opposed flow chambers adjoining the at least one thin-wall cavity section extend to the rim portion.

10. A method according to claim 9, wherein within a terminal zone of the at least one thin-wall cavity section adjacent the rim portion of the mold cavity, the respective inscribed-sphere dimension of the adjoining flow chambers are less than the respective inscribed-sphere dimension of upstream portions of the adjoining flow chambers.

11. A method according to claim 9, wherein within a terminal zone of the at least one thin-wall cavity section adjacent the rim portion of the mold cavity, the thickness of the at least one thin-wall cavity section increases in the direction of flow within the closest portions of the adjoining flow chambers at a rate greater than the rate of increase within the at least one zone of the at least one thin-wall cavity section.

12. A method according to claim 11, wherein a portion of the terminal zone is located between the adjoining at least two opposed flow chambers.

13. A method according to claim 11, wherein within an intermediate zone of the at least one thin-wall cavity section that is located between the adjoining at least two opposed flow chambers and between the at least one zone and the terminal zone, the thickness of the thin-wall cavity section increases in the direction of flow within the adjoining at least two opposed flow chambers at a rate less than the threshold rate, greater than the rate of increase within the at least one zone and less than the rate of increase within the terminal zone.

14. A method according to claim 1, wherein within an initial zone of the thin-wall section between the adjoining at least two opposed flow chambers and upstream from the at least one zone, the thickness of the thin-wall section does not change in the direction of flow within the adjoining at least two opposed flow chambers.

15. A method according to claim 1, wherein the flow chambers are elongated in the direction in which injected plastic material is directed within the flow chambers.

16. A method according to claim 1, wherein at each entrance position, the thin-wall cavity section is of uniform thickness in a direction normal to the general direction of flow within the adjoining flow chamber.

17. A method according to claim 1, wherein the thickness of each entrance position of the thin-wall cavity section decreases in a direction away from and normal to the general direction of flow within the adjoining flow chamber.

18. A mold for injection-molding a product that includes at least one thin wall, comprising:

a plurality of mold parts, which when combined define a mold cavity for forming the product and at least one gate from which fluid plastic material may be injected into the mold cavity;

US 6,599,460 B1

9

wherein the mold cavity includes at least one thin-wall cavity section and at least two opposed flow chambers that adjoin opposite edges of the thin-wall cavity section for directing injected fluid plastic material from exit positions of the said at least two opposed flow chambers into corresponding entrance positions of the thin-wall cavity section to thereby form at least one thin-wall portion of the product;

wherein the at least one thin-wall cavity section includes at least one zone that is located between said at least two opposed flow chambers;

wherein within the at least one zone inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber; and

wherein within the at least one zone the thickness of the at least one thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, with said increase being at less than a threshold rate to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone.

19. A mold according to claim 1, wherein the mold cavity includes a plurality of said thin-wall cavity sections and a plurality of said adjoining at least two opposed flow chambers at opposite edges of each thin-wall cavity section; and

wherein each thin-wall cavity section includes at least one said zone located between the adjoining at least two opposed flow chambers, in which inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber; and in which the thickness of the thin-wall cavity section increases in the direction of flow within the adjoining flow chambers at less than said threshold rate.

20. A mold according to claim 19, wherein the mold cavity defines a hollow product.

21. A mold according to claim 20, wherein the mold cavity defines a drink cup.

22. A mold according to claim 19, wherein each at least one thin-wall cavity section extends to a rim portion of the mold cavity in which a rim of the product is formed, and

wherein none of at least two opposed flow chambers adjoining the at least one thin-wall cavity section extend to the rim portion.

23. A mold according to claim 22, wherein within a terminal zone of the at least one thin-wall cavity section adjacent the rim portion of the mold cavity, the respective inscribed-sphere dimension of the adjoining flow chambers are less than the respective inscribed-sphere dimension of upstream portions of the adjoining flow chambers.

24. A mold according to claim 19, wherein within a terminal zone of the at least one thin-wall cavity section adjacent a rim portion of the mold cavity in which a rim of the product is formed, the respective inscribed-sphere dimension of the adjoining flow chambers are less than the respective inscribed-sphere dimension of upstream portions of the adjoining flow chambers.

10

25. A mold according to claim 18, wherein within a terminal zone of the at least one thin-wall cavity section adjacent a rim portion of the mold cavity in which a rim of the product is formed, the respective inscribed-sphere dimension of the adjoining flow chambers are less than the respective inscribed-sphere dimension of upstream portions of the adjoining flow chambers.

26. A mold according to claim 18, wherein each at least one thin-wall cavity section extends to a rim portion of the mold cavity in which a rim of the product is formed, and

wherein none of at least two opposed flow chambers adjoining the at least one thin-wall cavity section extend to the rim portion.

27. A mold according to claim 26, wherein within a terminal zone of the at least one thin-wall cavity section adjacent the rim portion of the mold cavity, the respective inscribed-sphere dimension of the adjoining flow chambers are less than the respective inscribed-sphere dimension of upstream portions of the adjoining flow chambers.

28. A mold according to claim 26, wherein within a terminal zone of the at least one thin-wall cavity section adjacent the rim portion of the mold cavity, the thickness of the at least one thin-wall cavity section increases in the direction of flow within the closest portions of the adjoining flow chambers at a rate greater than the rate of increase within the at least one zone of the at least one thin-wall cavity section.

29. A mold, according to claim 28, wherein a portion of the terminal zone is located between the adjoining at least two opposed flow chambers.

30. A mold according to claim 28, wherein within an intermediate zone of the at least one thin-wall cavity section that is located between the adjoining at least two opposed flow chambers and between the at least one zone and the terminal zone, the thickness of the thin-wall cavity section increases in the direction of flow within the adjoining at least two opposed flow chambers at a rate less than the threshold rate, greater than the rate of increase within the at least one zone and less than the rate of increase within the terminal zone.

31. A mold according to claim 18, wherein within an initial zone of the thin-wall section between the adjoining at least two opposed flow chambers and upstream from the at least one zone, the thickness of the thin-wall section does not change in the direction of flow within the adjoining at least two opposed flow chambers.

32. A mold according to claim 18, wherein the flow chambers are elongated in the direction in which injected plastic material is directed within the flow chambers.

33. A mold according to claim 18, wherein at each entrance position, the thin-wall cavity section is of uniform thickness in a direction normal to the general direction of flow within the adjoining flow-chamber.

34. A mold according to claim 18, wherein the thickness of each entrance position of the thin-wall cavity section decreases in a direction away from and normal to the general direction of flow within the adjoining flow chamber.

*    *    *    *    *

# EXHIBIT B

# SORENSEN RESEARCH & DEVELOPMENT

7040 AVENIDA ENCINAS, SUITE 104-277
CALRSBAD, CA 92011
(858) 413-6062

Chris Kuczynski, Esq.
Registered Patent Attorney
ck@ckiplaw.com

February 21, 2011

**BY FEDEX**

Mr. John Clearman
President
Clearman's Galley
Clearman's Golden Clock Inn, Inc.
Clearman's North Woods Inn of Covina
Clearman's North Woods inn of Lamirada, Inc.
Clearman's North Woods Inn, Inc.
Clearman's Steak 'n Stein Inn, Inc.
7247 Rosemead Blvd.
San Gabriel, CA 91775-1315

## CONFIDENTIAL OFFER OF COMPROMISE
Subject To Federal Rules Of Evidence § 408

RE:   Clearman's Golden Clock Inn, Inc.; Clearman's North Woods Inn of Covina; Clearman's North Woods inn of Lamirada, Inc.; Clearman's North Woods Inn, Inc.; and Clearman's Steak 'n Stein Inn, Inc.'s ("CLEARMAN") apparent unauthorized usage of the technology taught in United States Patent No. 6,665,460; CLEARMAN'S Original Spread Container Lids, Our Case No. 7010

Dear Mr. Clearman:

We have recently examined several of CLEARMAN'S products. From our experts' examination and testing, we have determined that the structure of the above referenced products meets the claim limitations of United States Patent Number

Mr. John Clearman
February 21, 2011
Page 2 of 5

6,599,460 ("the '460 patent"). Further, our records indicate that CLEARMAN is not currently licensed under the '460 patent.

Sorensen Research & Development ("Sorensen R&D"), is the owner of the '460 patent entitled "PREVENTION OF VOID-BASED-IRREGULARITY FORMATION IN THIN-WALL, INJECTION-MOLDED PLASTIC PRODUCT," filed on July 3, 2000. Sorensen R&D is a leader in the field of plastic manufacturing technology. Its patents, both U.S. and foreign, are at the forefront of advances in manufacturing and disclose valuable knowledge to the manufacturing industry in the form of significant improvements to the processes used for manufacturing products. Sorensen R&D licenses this valuable technology to various industries and promotes cutting-edge research and development efforts thereby fostering progress and the discovery of scientific advancements in injection molding. Sorensen R&D's patents teach innovative and cost-effective manufacturing process solutions that provide licensees with a competitive advantage. Its patents further provide companies with limited capital, or limited accessibility to highly skilled scientists, access to advancements in research and development that would otherwise be unattainable.

Specifically, the '460 patent provides an elegant solution for injection molding of thin-wall plastic products and particularly for preventing the formation of void-based irregularities in thin-wall portions of such products.

The following table lists at least one line of CLEARMAN products that our inspection shows to infringe the '460 patent (hereinafter, "Accused Products"),

| ACCUSED PRODUCTS |
| --- |
| CLEARMAN'S Original Spread Container Lids |

This list is not intended to be exhaustive, rather it indicates one line of Accused Products that we have discovered and examined. Our investigation into additional Accused Products continues.

Sorensen R&D is prepared to discuss reasonable terms for a license and release. CLEARMAN must obtain a license and release under the '460 patent for the products it imported into, manufactured, offered for sale and/or sold within the United States. This requirement extends to any additional infringing CLEARMAN products that we have not yet identified. CLEARMAN has a legal duty to avoid infringement of United States patents. CLEARMAN'S manufacture of its products outside the United States does not avoid infringement liability when infringing products were imported into the United States.

Mr. John Clearman
February 21, 2011
Page 3 of 5

We have enclosed for your convenience a drawing for the Accused Products prepared by Sorensen R&D. We are providing this drawing as an example of the Accused Products that illustrate our infringement analysis. The product cross-sectional view (FIG. 1) of the drawing shows the Accused Product and at least one gate location. FIGS. 2 and 3 illustrate where each element of the patent claims appear.

CLEARMAN'S unauthorized use of the '460 patented technology is further substantiated by the enclosed claim chart associated with the attached drawing. The claim chart compares each of the illustrated Accused Products to claim number one (1) of the '460 patent. The first column of the claim chart quotes the text of independent claim one (1). The second column provides commentary pointing out the corresponding structure or element of the Accused Product. The third column is a remark reference number. Finally, the fourth column identifies one or more reference figures from the accompanying drawing showing the particular aspect that is the subject of the remark. For your reference, a copy of the '460 patent is enclosed.

**PLEASE TAKE FURTHER NOTICE:** This letter constitutes a notice of patent infringement in violation of 35 U.S.C. § 271. Should CLEARMAN fail to diligently investigate this matter upon receipt of this notice, it will be considered a breach of CLEARMAN'S affirmative duty to investigate allegations of patent infringement. *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580-81 (Fed. Cir. 1992); *NTP, Inc. v. Research In Motion, Ltd.*, 270 F. Supp. 2d 751, 755-58 (E.D. Va. 2003). Such breach of the duty to investigate is evidence of willful infringement of the '460 patent, which finding can support an enhancement of damages awarded pursuant to 35 U.S.C. § 284. Courts have repeatedly found that a company that intentionally undertakes the risk of importing infringing products unsupported by a thorough and competent investigation is exactly the type of activity the damages enhancement provisions of the patent law seek to prevent. *See, e.g., Domestic Fabrics Corp. v. Sears Roebuck & Co.*, 326 F. Supp.2d 694, 700 (E.D.N.C. 2004).

We recognize that CLEARMAN very likely contracts out the fabrication of many components of its products to manufacturing agents. However, CLEARMAN is ultimately responsible for the infringement of the '460 patent in making, importing, offering for sale or selling its products and components. CLEARMAN'S liability holds regardless of whether it makes these parts itself or through a third-party. Neither production of the Accused Products through manufacturing agents, nor production of the Accused Products outside of the United States excuses CLEARMAN'S liability for infringement of the '460 patent. Title 35, section 271 of the United States Code provides that:

Mr. John Clearman
February 21, 2011
Page 4 of 5

    (a)    Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Moreover, with regard to patented processes, section 271 provides:

    (g)    Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

Sorensen R&D has no interest in the policing problems that are inherent in licensing contracted parts fabricators. CLEARMAN is the party that offers to sell and sells these products in the United States. Therefore, CLEARMAN is liable as a direct infringer for those products which infringe United States patents, including the '460 patent. To the extent that CLEARMAN has contracted with parts fabricators in foreign countries, CLEARMAN has further affirmatively undertaken the risk of importing infringing products into this country. That risk carries with it the serious financial consequences of patent infringement. Although having products manufactured abroad may appear to be a financially profitable decision, it does not come without the attendant potential that the foreign manufacturer unfairly makes use of U.S. patented processes thereby exposing the U.S. importer to patent infringement liability under the above-quoted Section 271(g). Furthermore, as other U.S. importers have already recognized, the burden of showing that no violation has taken place will fall to CLEARMAN as the importer of the infringing product and the party best suited to obtain information from its foreign manufacturer regarding the nature of the Accused Process.

CLEARMAN must recognize that licensing the '460 patented technology will allow it to continue to enjoy all the benefits and competitive advantages offered by this useful patent. By contrast, failure to license its usage of the '460 patented technology can only lead to the risk and expense of litigation, an award of damages, and attorneys' fees.

There are scores of businesses that have licensed their usage of Sorensen R&D's patented technology. Some of those businesses include Microsoft, Hewlett-Packard Company, 3M Company, Adidas-Salomon, Atomic Ski, Bosch, BMW AG, Chicony Electronics, DaimlerChrysler AG, Fluke, Head USA, Mercedes-Benz, Dremel, Garmin International, Irwin Tools, Milwaukee Electric (Milwaukee Tools), Nordica, Rubbermaid, Salomon, Skil, Strait-Line, Technica, The Stanley Works (Stanley Tools),

Mr. John Clearman
February 21, 2011
Page 5 of 5

and Welch Allyn. Sorensen R&D is committed to protecting the value to its licensees by
stopping infringement wherever it is found. To protect Sorensen R&D's intellectual
property rights, we cannot allow CLEARMAN'S unlicensed usage to continue. There is
a narrow window of opportunity at this early stage wherein the parties can resolve this
matter without incurring high costs and legal fees through amicable discussions leading
to a license agreement. We look forward to receiving CLEARMAN'S substantive
response to our infringement assertions within thirty (30) days. Further, we are enclosing
a binder illustrating a selection of products manufactured by Sorensen R&D's licensees.

    Your anticipated courtesy in working with us toward a rapid and amicable
resolution of this matter is greatly appreciated.

                                        Cordially,

                                        Chris Kuczynski
                                        Registered In-House Counsel

Encl:   Drawing No. D-7010
        Claim Chart for Drawing No. D-7010
        U.S. Patent No. 6,599,460
        Binder

FEB-22-2011 09:26 FROM:CLEARMANS NORTHWOODS 6603807975 TO:COJUNA P.4/9

SORENSEN RESEARCH & DEVELOPMENT
DRAWING NO. D-7010
CLEARMAN'S ORIGINAL SPREAD CONTAINER LID



FIG. 1: Cross-Sectional Product View

GATE

FLOW CHAMBER

0.7 mm
1.3 mm

FLOW CHAMBER

ZONE

1.26 mm

0.66 mm

FLOW CHAMBER

THIN-WALL CAVITY SECTION

FIG. 2: Detailed Mold Cavity View

# SORENSEN RESEARCH & DEVELOPMENT
## DRAWING NO. D-7010
### CLEARMAN'S ORIGINAL SPREAD CONTAINER LID



FIG. 3: Top Cavity View

| CLAIM 1 -- '460 PATENT | REMARK | REM. NO. | REF. FIGURE |
|---|---|---|---|
| wherein the at least one thin-wall cavity section includes at least one zone that is located between said at least two opposed flow chambers, and | At least one thin-wall cavity section includes at least one zone that is located between at least two opposed flow chambers. | 5 | Fig. 3 |
| wherein within the at least one zone inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber; and | Within the at least one zone inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber. | 6 | Fig. 2 |
| (b) injecting fluid plastic material from the gate into the mold cavity to form the product; | Fluid plastic material is injected from the gate into the mold cavity to form the product. | 7 | |
| wherein step (a) comprises combining mold parts that define a said mold cavity in which within said at least one zone of the at least one thin-wall cavity section the thickness of the at least one thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, | Step (a) comprises combining mold parts that define the mold cavity in which within the at least one zone of the at least one thin-wall cavity section the thickness of the at least one thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone. | 8 | |
| with said increase being at less than a threshold rate to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone. | The increase is at less than a threshold rate to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone. | 9 | |

Claim Chart for Sorensen R&D Drawing No. D-7010

# EXHIBIT C

R. JOSEPH TROJAN

DYLAN C. DANG
JEEYEON HAN
SHARON E. GHAUSI
WILLIAM WONG

OF COUNSEL
J. NICHOLAS GROSS

# TROJAN LAW OFFICES

Rexford Plaza
9250 Wilshire Boulevard
Suite 325
Beverly Hills, California 90212
www.patenTrademark.com
REGISTERED PATENT ATTORNEYS

PATENT, TRADEMARK,
COPYRIGHT, TRADE SECRET &
RELATED CAUSES

TELEPHONE (310) 777-8399
FACSIMILE (310) 777-8348

February 28, 2011


Chris Kuezynski, Esq.
SORENSEN RESEARCH & DEVELOPMENT
7040 Avenida Encinas, Suite 104-277
Carlsbad, CA  92011

*Via e-mail & U.S. Mail*

> *Re:*   [HIGHLAND PLASTICS CORP.]
> Sorensen Research v. Highland Plastics
> Accusation of infringement of U.S. Patent
> No. 6,599,460 for Container Lid
> *TLO File No. 11-02-5865*

Dear Mr. Kuezynski:

We are intellectual property counsel for Highland Plastics Corporation (hereinafter, "Highland"), the manufacturer of the Clearman Products that you identified in your letter of February 21, 2011 to John Clearman. Highland Plastics will be intervening on behalf of Clearman in this matter.

You have accused the Clearman Original Spread Container Lid of infringing United States Patent No. 6,599,460. The '460 patent has two independent claims. Claim 1 is directed to a method for injection molding. Claim 18 is directed to a mold for injection molding. You have only accused the Clearman lid of infringing Claim 1. Your claim chart indicates that based upon the inherent characteristics of the end product, you believe that you can establish the method by which the lid was made.

Sorensen's claim for infringement is without merit for the following reasons:

The mold for the accused lid was first designed in 1975. Production of the lid began in 1977 at Highland's United States facilities and has been continuously sold for the past 33 years. The mold and methods of operation have been on public display during that entire time. Highland does not keep its manufacturing processes or its facilities secret. In fact, the company strongly encourages tours of its facilities by its customers and, at times, even its

Chris Kuezynski, Esq.
Sorensen Research v. Highland Plastics
Accusation of infringement of U.S. Patent
No. 6,599,460 for Container Lid
TLO File No. 11-02-5865
February 28, 2011
Page 2 of 3

competitors.

Highland is so dedicated to giving frequent tours of its facilities that it has policies in place to insure that the tours provide the highest quality experience. For example, rather than using standard brown card board boxes to ship its products, Highland uses white card board boxes in order to give the entire facility the cleanest appearance possible during tours. Highland also has extra bright lighting beyond what is required for its operations in order to convey a sense of light and openness to its tour guests. Both of these policies add significantly to Highland's overhead, but are incurred because Highland believes strongly in providing its customers and guests with complete transparency concerning its facilities and manufacturing methods. None of the tour guests are asked to sign any non-disclosure agreement of any kind. Hence, the molds and manufacturing methods used by Highland have been on public display for over 30 years.

If, in fact, the '460 patent covers the method of injection molding used by Highland, then the '460 patent is clearly invalid under 35 U.S.C. § 102(a) and §102(b) because the method was publicly known in this country for more than 23 years before the filing date of the patent application that matured into the '460 patent. As the Federal Circuit instructs, "The nonsecret use of a claimed process in the usual course of producing articles for commercial purposes is a public use." W.L. Gore & Associates, Inc. v. Garlock, Inc., 721 F.2d 1540, 1549 (Fed. Cir. 1983).

Sorensen has made your allegations of infringement on the basis that Highland's method of manufacture used to make the accused lid must meet each of the limitations of Claim 1 based solely upon your examination of the final product, the lid itself. This is an admission that the physical traits of the lid inherently retain sufficient characteristics of the way it was made in order to teach all of the claim limitations of the patented method. This means that the sale of the lid inherently disclosed the method of its manufacture. Since the lid was on sale for 23 years before the filing date of the '460 patent, the patent is invalid because of an on-sale bar under 35 U.S.C. § 102(b). As the Federal Circuit teaches, "If a product that is offered for sale inherently possesses each of the limitations of the claims, then the invention is on sale" Abbott Laboratories, Inc. v. Geneva Pharmaceuticals, Inc., 182 F.3d 1315, 1319 (Fed. Cir. 1999).

Each of the above arguments would invalidate the '460 patent if the method used by Highland is covered by Claim 1 of the '460 patent. We have advanced these arguments to demonstrate that even if you were to succeed in proving infringement, you would be simultaneously invalidating your own patent. But we are not conceding infringement. We have not yet completed our claim analysis since it appears unnecessary in light of the fact that Highland has publicly used its method for 33 years. If pressed, we reserve the right to advance any non-infringement arguments that may come to light after further study.

Chris Kuezynski, Esq.
Sorensen Research v. Highland Plastics
Accusation of infringement of U.S. Patent
No. 6,599,460 for Container Lid
TLO File No. 11-02-5865
February 28, 2011
Page 3 of 3

Sorensen's claim is also without merit because the '460 patent issued in 2003. Sorensen has waited until 2011 to accuse the Clearman lid of infringement. Sorensen has had constructive notice of the accused lid by reason that it has been sold openly and notoriously for 33 years. Sorensen's delay in making a claim of infringement is not excusable. It has waited eight years after issuance to make these accusations. Such a delay is barred by laches. As the Federal Circuit has held, "a prima facie defense of laches is made out upon proof by the accused infringer that the patentee delayed filing suit for six years after actual or constructive knowledge of the defendant's acts of alleged infringement. Without the presumption, the two facts of unreasonable delay and prejudice might reasonably be inferred from the length of the delay, but not necessarily. With the presumption, these facts must be inferred, absent rebuttal evidence." A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1037 (Fed. Cir. 1992).

We expect to receive your written assurance that you will not pursue any claim of infringement against Highland by no later than March 15, 2011.

Very truly yours,

TROJAN LAW OFFICES
by

/s/

R. Joseph Trojan

RJT:rjt
cc: J. Nelson

# EXHIBIT D

# SORENSEN RESEARCH & DEVELOPMENT

7040 AVENIDA ENCINAS, SUITE 104-277
CARLSBAD, CA 92011
(858) 413-6062

Chris Kuczynski, Esq.
Registered Patent Attorney
ck@ckiplaw.com

March 4, 2011

**BY FEDEX**

Mr. Joseph Trojan
Trojan Law Offices
9250 Wilshire Boulevard
Beverly Hills, CA 90212
(310) 777-8399

## CONFIDENTIAL OFFER OF COMPROMISE
Subject To Federal Rules Of Evidence § 408

RE:     Highland Plastics, Inc.'s and CLEARMAN'S ("HIGHLAND") apparent
unauthorized usage of the technology taught in United States Patent No.
6,665,460; CLEARMAN'S Original Spread Container Lids, Our Case No. 7010
Your TLO File No. 11-2-5865

Dear Mr. Trojan:

Thank you for your letter dated February 28, 2011 with regard to Sorensen
Research & Development's ("Sorensen R&D") assertions that Clearman's and Highland
Plastics, Inc. may be practicing the technology taught in United States Patent No.
6,665,460 ("the '460 patent").

Based on your response, it appears that your client is unwilling to settle this
matter amicably and avoid litigation. Therefore, please confirm you are authorized to
accept service of process on behalf of HIGHLAND.

Mr. Joseph Trojan
March 4, 2011
Page 2 of 5

Further, Sorensen R&D is asserting independent method claim 1 because neither actual nor constructive notice is required where the patent claims a process.[1] Therefore, please make sure that the legally admissible evidence HIGHLAND provides Sorensen R&D is accurate as to all manufacturing processes dating back six years from the receipt of the notice of infringement dated February 21, 2011. However, Sorensen R&D also reserves the right to assert independent claim 18 in court.

In accordance with 35 U.S.C. § 295(2), Sorensen R&D has been seeking to determine the process actually used to manufacture the Accused Product with no success. Sorensen R&D has been trying to collect the required **evidence** to its notice of infringement since the letter to Clearman's of February 21, 2011. To date, HIGHLAND has failed to provide Sorensen R&D with **evidence** of non-infringement to its reasonable efforts to determine the process actually used in the production of the Accused Product.

In response, Sorensen R&D has only received attorney argument and unverified factual assertions for the proposition of non-infringement. Moreover, an attorney opinion is not **evidence** of non-infringement and will not induce Sorensen R&D to terminate its investigation. Here, HIGHLAND has failed to provide Sorensen R&D with **evidence** of non-infringement after being requested to do so. Therefore, Sorensen R&D has made a "reasonable effort" to determine the process *actually* used to manufacture the Accused Product pursuant to 35 U.S.C. §295.

Sorensen R&D has made reasonable efforts to determine the process actually used in the production of the Accused Product, but have been unable to so determine. Sorensen R&D is not required to blindly accept unsubstantiated statements and purported second-hand hearsay information from unnamed sources. Thus, 35 U.S.C. §295 presumption will apply in this matter.

We have the utmost respect for you and your firm as talented litigators and we're confident that any litigation with your firm will be lengthy and expensive. As you know, a typical patent infringement lawsuit costs between $2,000,000 and $5,000,000 for each party. One issue alone can cost each party in excess of $700,000 in discovery and legal costs, none of which will be reimbursed by the other side. That is why we would prefer to resolve this matter without resolving to litigation.

However, in matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement.[2] It is important

---

[1] *American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523, 28 USPQ2d 1321 (Fed. Cir. 1993); *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 217 USPG 977 (Fed. Cir. 1983).

[2] See *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226 (Fed. Cir. 1989).

Mr. Joseph Trojan
March 4, 2011
Page 3 of 5

to note that "[a] patent is presumed valid."[3] Any attempt at invalidating a U.S. patent requires HIGHLAND to litigate this issue in court. Therefore, your client's continued unsubstantiated invalidity arguments and unsupported factual assertions will be disregarded as a waste of time and money for both parties.

Next, you assert that "[t]he mold for the accused lid was first designed in 1975. Production of the lid began in 1977." If this is true, please provide us with admissible documented evidence sufficient for use in a court of law that supports this assertion. In fact, please provide us with admissible evidence that supports that this EXACT mold design was in use prior to the '460 patent filing date of July 3, 2000. Without the production of this evidence, Sorensen R&D is left to conclude that no such evidence exists.

Your argument that lighting in a manufacturing plant is sufficient for a visitor to determine the characteristics of a mold design where differences are measured in tenths of millimeters does not require a response. This argument is will be dismissed by the court with little effort by the plaintiff.

In response to your argument on latches, the court in a very lengthy and fact specific exercise must consider when the patent owner knew or should have known of the defendant's alleged infringement. Here, Sorensen R&D has just recently discovered your client's product. In deciding latches, a court must consider and weigh any justification offered by the plaintiff for its delay. An excuse to latches that has been recognized by the court includes other litigation by the plaintiff.[4] Other litigation by the plaintiff defeats any equitable latches defense your client may advance. Specifically, Sorensen R&D has been actively and openly litigating its injection molding patents for many years against companies like Daimler Chrysler, BMW, and Black & Decker to name just a few. Therefore, your client's latches defense will fail for at least this reason.

In regard to damages, the Federal Circuit in *Weinar* upheld an award of three cents per infringing product, which resulted in a damage award exceeding the gross sales figure for the infringing device.[5] The Court in *DNIC Brokerage Co.* awarded a royalty equal to 22% of the infringer's sales, stating that "the [p]laintiff is at least entitled to a royalty that prohibits defendants from profiting from their infringement by retaining the

---

[3] 35 U.S.C. §282.

[4] See *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 23 USPQ2d 1860 (Fed. Cir. 1992), the plaintiff introduced evidence that the delay was attributable to other litigation and a reexamination. This was more than sufficient to raise a dispute as to whether the delay was excusable.

[5] See *Weinar v. Rollform, Inc.*, 744 F.2d 797 (Fed. Cir. 1984), *cert. denied*, 470 U.S. 1084 (1985).

Mr. Joseph Trojan
March 4, 2011
Page 4 of 5

difference between a reasonable royalty and their net profit."[6] Finally, the Federal Circuit in *Stickle* observed that "the trial court may award an amount of damages greater than a reasonable royalty...[because] the infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid."[7] This type of increase over an ordinary "reasonable royalty" is sometimes referred to by the Federal Circuit as a "reasonable royalty *for an infringer*."

Sorensen R&D does not desire to incur the expense of additional legal action. It prefers amicable discussions leading to licensing agreements by parties found to be utilizing our patented technology, so that the patent users can enjoy the benefits that the technology offers, while protecting the value of the licenses to our other licensees where possible. Again, Sorensen R&D has extensively litigated several of its patents with companies such as DaimlerChrysler, Black & Decker, and BMW. Only after expending an insane amount of human resource time and corporate capital, did these companies become licensees of Sorensen R&D's patents. We suggest that HIGHLAND does not make the same expensive mistakes that those who have elected litigation have made.

Sorensen R&D is committed to protecting its intellectual property through all available legal means. It will be to everyone's advantage to work toward a resolution that does not require litigation. Sorensen R&D's standard license fee is $300,000 to allow HIGHLAND to import, sell, offer for sale, or use the described technology or product in the United States. Sorensen Research & Development's offer is revoked on **March 18, 2011** and a substantially higher licensing fee will be demanded from HIGHLAND as an infringer.

U.S. law mandates a reasonable royalty as the floor below which damages shall not fall.[8] A reasonable royalty is the amount a person, desiring to manufacture, use, or sell a patented article or practice a patented method would be willing to pay as a royalty.

The royalty arrived at must be reasonable under all the circumstances; that is, it must be at least a close approximation of what would be "adequate to compensate" for the "use made of the invention by the infringer" as required by §284.[9] It is a hypothetical royalty resulting from arm's-length negotiations between a licensor and a licensee.

A logical measure of a hypothetical reasonable royalty is an actual, established royalty paid by others. And even if there is no existing royalty rate, it is appropriate to

---

[6] See *DNIC Brokerage Co. v. Morrison and Dempsey Communications, Inc.*, 14 USPQ.2d 1043 (C.D. Cal. 1989).

[7] See *Stickle v. Heublein*, 716 F.2d 1550 (Fed. Cir. 1983).

[8] 35 U.S.C. §284. See *Stickle v. Heublein Inc.*, 716 F.2d 1550, 219 USPQ 377, 385 (Fed. Cir. 1983).

[9] *Fromson v. Western Litho Plate & Supp. Co.*, 853 F.2d 1568, 7 USPQ2d 1606 (Fed. Cir. 1988).

Mr. Joseph Trojan
March 4, 2011
Page 5 of 5

consider royalties paid by others in the industry for use of a comparable patent.[10] Here, Sorensen R&D has established a pre-litigation floor for a reasonable royalty rate by licensing the '460 patent for a standard royalty rate of $300,000.

The standard pre-litigation royalty rate demanded by Sorensen R&D will not be offered again should litigation be necessary to resolve this dispute.

If there is any substantial, factual, and documented reason why Sorensen R&D should not proceed to make HIGHLAND the subject of Sorensen R&D's next lawsuit for infringement of the '460 patent, including a willingness to resolve this matter as outlined above, provide it to us no later than **March 18, 2011**.

Your anticipated courtesy in working with us toward a rapid and amicable resolution of this matter is greatly appreciated.

Cordially,

Chris Kuczynski
Registered In-House Counsel

---

[10] *American Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 227 USPQ 299 (Fed. Cir. 1985).

# EXHIBIT E

# DECLARATION OF JIM NELSON

I, Jim Nelson, declare as follows:

1.    I am the President of Highland Plastics Corporation. I have personal knowledge of the facts stated herein. The facts contained in this declaration are based upon my personal knowledge and are known to me to be true to the best of my ability.

2.    The mold for the Clearman Original Spread Container Lid (hereinafter "lid") that is accused of infringing United States Patent No. 6,599,460 (hereinafter "'460 patent") was first designed in 1975. Production of the lid began in 1977 at Highland's United States facilities and has been continuously sold for the past 33 years. The mold and methods of operation have been on public display during that entire time. Highland does not keep its manufacturing processes or its facilities secret. In fact, the company strongly encourages tours of its facilities by its customers and, at times, even its competitors.

3.    Highland is so dedicated to giving frequent tours of its facilities that it has policies in place to insure that the tours provide the highest quality experience. For example, rather than using standard brown card board boxes to ship its products, Highland uses white card board boxes in order to give the entire facility the cleanest appearance possible during tours. Highland also has extra bright lighting beyond what is required for its operations in order to convey a sense of light and openness to its tour guests. Both of these policies add significantly to Highland's overhead, but are incurred because Highland believes strongly in providing its customers and guests with complete transparency concerning its facilities and manufacturing methods. None of the tour guests are asked to sign any non-disclosure agreement of any kind. Hence, the molds and manufacturing methods used by Highland have been on public display for over 30 years.

4.    The drawings attached identified as Mold Prints 1-4 and Part Prints 1-3 are true and correct copies of drawings of the lid and of the mold for the lid. The lid has been made according to the specification in the drawings since 1977.

5.    The lid does not have "two opposed flow chambers...for directing injected fluid plastic material from exit positions of the said at least two opposed flow chambers

into corresponding entrance positions of the at least one thin-wall cavity section to thereby form at least one thin-wall portion of the product..." based on my understanding of the '460 patent. The ribs on the rim portion of the lid function to reinforce and strengthen the rim portion so as to facilitate the lid's ability to engage a corresponding container.

6.      The lid does not have "thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, with said increase being at less than a threshold rate to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone" based on my understanding of the '460 patent. The so-called thin portion of the lid is of a substantially uniform thickness.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 11th day of March, 2011 in Mira Loma, California.



PART PRINT 1

PART PRINT 2

SCALE 10 X

END VIEW OF LUG

PART PRINT 3



MOLD PRINT 2

CORE & CAVITY TO BE HEAT TREATED
TO A MAXIMUM HARDNESS OF 54/56 R/C
WITH 3/64 CASE.
STRIPPER RING TO BE 35/40 R/C
WITH 1/32 CASE.
FLASH CHROME PLATE .0001 MAX.

90TH
TRACTION

PN 405   LID MOLD

| | | KNOCK OUT RODS | DRILL ROD | 1/10.0 x .70 |
| 5 | 4 | BAFFLE RINGS | BRASS OR ALUM | 4" O.D. x .58" |
| 4 | 3 | STRIPPER RING | | 7 1/8 O.D. x 3 1/2 |
| 3 | 1 | CORE | 8620 | 5 9/16 O.D. x 1 3/4 |
| 2 | 1 | CAVITY | 8620 | 7 1/8 O.D. x 2 1/2 |
| 1 | 1 | | 8620 | |

DET. REQ.

FULL
DEGREE
DECIMAL

5-5-75

522- 206

334

MOLD PRINT 3

CAVITY DETAIL
SCALE: 2X1

.031 R TYP

6° 60 PLCS

.390
.375
.030
2°
5°
.031 R
3.665 DIA
4.596 DIA



MOLD PRINT 4

NOZZLE HOLE & GATE DETAIL
SCALE : 2X1

# EXHIBIT F

R. JOSEPH TROJAN

DYLAN C. DANG
JEEYEON HAN
SHARON E. GHAUSI
WILLIAM WONG

OF COUNSEL
J. NICHOLAS GROSS

# TROJAN LAW OFFICES

Rexford Plaza
9250 Wilshire Boulevard
Suite 325
Beverly Hills, California 90212
www.patenTrademark.com
REGISTERED PATENT ATTORNEYS

PATENT, TRADEMARK,
COPYRIGHT, TRADE SECRET &
RELATED CAUSES

TELEPHONE (310) 777-8399
FACSIMILE (310) 777-8348

March 14, 2011

Chris Kuczynski, Esq.
SORENSEN RESEARCH & DEVELOPMENT
7040 Avenida Encinas, Suite 104-277
Carlsbad, CA 92011

*Via U.S. Mail & Email to ck@ckiplaw.com*

Re:   [HIGHLAND PLASTICS CORP.]
      *Sorensen Research v. Highland Plastics*: Accusation of Infringement of
      U.S. Patent No. 6,599,460 for Container Lid
      TLO File No. 11-02-5865

Dear Mr. Kuczynski:

   Further to my letter of March 7, 2011, please find enclosed the declaration of Jim Nelson, president of Highland Plastics Corp. (hereinafter "Highland"), which avers to the facts set forth in my February 28, 2011 letter regarding the manufacturing of the Clearman Original Spread Container Lid. The declaration is accompanied by true and correct copies of original drawings from 1975 of the mold parts for the lid. We also have a physical sample of a lid made from a mold (no. 67) that was cast in 1976, which you are welcome to inspect. This evidence establishes the simple fact that the Clearman lid has been made and sold for more than 25 years before the '460 patent issued.

   Moreover, we have now undertaken an initial evaluation of your infringement allegations and find them to be utterly meritless. The '460 patent teaches a way of injection molding that increases the thickness of "thin-cavity sections" without the problem of "void-based irregularities." There is no engineering reason to make the accused lid in the manner claimed by the '460 patent for the simple reason that the problem addressed by the patent is of no concern in making the accused lid. Moreover, it would be unnecessarily costly and difficult to make the lid according to the patented claims.

   More particularly, the lid does not infringe claim 1 of the '460 patent. Claim 1 recites, in

Chris Kuczynski, Esq.
*Sorensen Research v. Highland Plastics*
Accusation of infringement of U.S. Patent No. 6,599,460 for Container Lid
TLO File No. 11-02-5865
March 14, 2011
Page 2 of 3

relevant part, that the injection-molding method requires "two opposed flow chambers...for directing injected fluid plastic material from exit positions of the said at least two opposed flow chambers into corresponding entrance positions of the at least one thin-wall cavity section to thereby form at least one thin-wall portion of the product..." (7:11-18) The ribs on the rim portion of the lid are not "flow chambers." The ribs merely function to reinforce and strengthen the rim portion so as to facilitate the lid's ability to engage a corresponding container.

Further, it does not make sense that the ribs would function as "flow chambers" given the location of the gate at the center of the lid. As noted in your own drawings, the gate—*i.e.* the point at which fluid plastic material is injected into the mold cavity—is located at the center of the lid, whereas the so-called "flow chambers" are located on the rim portion of the lid. Since fluid plastic material is injected at the center of the lid, it would be impossible to channel the fluid plastic material into the discrete "flow chambers" as the fluid plastic material spreads outward toward the rim portion during the molding process.

By contrast, compare the lid to the example of the drink cup shown in Figure 4 of the '460 patent. The '460 patent teaches, "The thin-wall portions 42 of the drink cup 40 are formed in the thin-wall cavity sections 20. The drink cup 40 also includes ridges 52, which are formed in the flow chambers 21 of the mold cavity 48." (4:60-64) Figure 4 shows that the flow chambers stem from the gate (*i.e.* a single point where the fluid plastic material is injected). Since the ribs that you allege to be "flow chambers" do not connect to the gate at the center of the accused lid, we fail to see how the fluid plastic material can be directed into the "flow chambers" as in the drink cup.

As a related matter, the lid does not have "inscribed-sphere dimensions at each entrance position [that] are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber." (7:21-24) Because the lid does not have "flow chambers," it does not have "inscribed-sphere dimensions" as recited in claim 1.

In addition to the absence of flow chambers in the accused lid, the lid also does not have a "thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, with said increase being at less than a threshold rate to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone." (7:30-36) As noted above, there is no reason why the lid would be made to have increased thickness in the area that you have identified as the "thin-wall cavity section." Regardless, the enclosed drawings clearly show the portion of the lid that you allege to be the "thin-wall cavity section" is of substantially uniform thickness. It does not increase in thickness. Therefore, the lid does not meet this additional limitation of claim 1.

In short, there is no infringement, either literally or under the doctrine of equivalents. If you disagree, please identify what evidence you have discovered in doing your due diligence

Chris Kuczynski, Esq.
*Sorensen Research v. Highland Plastics*
Accusation of infringement of U.S. Patent No. 6,599,460 for Container Lid
TLO File No. 11-02-5865
March 14, 2011
Page 3 of 3

under Rule 11 that shows otherwise. *Q-Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1300-02 (Fed. Cir. 2004) (requiring "good faith, informed comparison of the claims of a patent against the accused subject matter"). If there are any outstanding issues in this regard, we would like a teleconference to discuss possible resolution of the matter.

Very truly yours,

TROJAN LAW OFFICES
by

/s/
R. Joseph Trojan

Encls.
RJT:dcd
cc: J. Nelson

3

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## CV11- 2246 SJO (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| HIGHLAND PLASTICS, INC., a California corporation | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV11 02246 SJO (DTBx) |
| v. | |
| SORENSEN RESEARCH & DEVELOPMENT TRUST | |
| | SUMMONS |
| DEFENDANT(S). | |

TO:   THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney R. Joseph Trojan _____, whose address is:

TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212

an answer to the ☒ complaint ☐_____ amended complaint ☐ counterclaim ☐ cross-claim which is herewith served upon you within __21__ days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

Clerk, U.S. District Court

Dated: _____MAR 1 6 2011_____

CHRISTOPHER POWERS

By: _____
         Deputy Clerk

*(Seal of the Court)*

1181

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>HIGHLAND PLASTICS, INC., a California corporation | **DEFENDANTS**<br>SORENSEN RESEARCH & DEVELOPMENT TRUST |
| **(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):<br>San Bernardino | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| **(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br>R. Joseph Trojan<br>TROJAN LAW OFFICES<br>9250 Wilshire Blvd., Suite 325<br>Beverly Hills, CA 90212, Tel. (310) 777-8399 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
35 U.S.C. §1 et seq.
Invalidity and Non-Infringement of US Patent Reg. No. 6,599,460B1

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to | ☐ 710 Fair Labor Standards |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 371 Truth in Lending | Vacate Sentence | Act |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | Liability | ☐ 380 Other Personal | Habeas Corpus | ☐ 720 Labor/Mgmt. |
| ☐ 450 Commerce/ICC | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Property Damage | ☐ 530 General | Relations |
| Rates/etc. | ☐ 150 Recovery of | Slander | ☐ 385 Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. |
| ☐ 460 Deportation | Overpayment & | ☐ 330 Fed. Employers' | Product Liability | ☐ 540 Mandamus/ | Reporting & |
| ☐ 470 Racketeer Influenced | Enforcement of | Liability | BANKRUPTCY | Other | Disclosure Act |
| and Corrupt | Judgment | ☐ 340 Marine | ☐ 422 Appeal 28 USC | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product | 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted | Liability | ☐ 423 Withdrawal 28 | FORFEITURE / | Litigation |
| ☐ 490 Cable/Sat TV | Student Loan (Excl. | ☐ 350 Motor Vehicle | USC 157 | PENALTY | ☐ 791 Empl. Ret. Inc. |
| ☐ 810 Selective Service | Veterans) | ☐ 355 Motor Vehicle | CIVIL RIGHTS | ☐ 610 Agriculture | Security Act |
| ☐ 850 Securities/Commodities | ☐ 153 Recovery of | Product Liability | ☐ 441 Voting | ☐ 620 Other Food & | PROPERTY RIGHTS |
| /Exchange | Overpayment of | ☐ 360 Other Personal | ☐ 442 Employment | Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 | Veteran's Benefits | Injury | ☐ 443 Housing/Acco- | ☐ 625 Drug Related | ☒ 830 Patent |
| USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- | mmodations | Seizure of | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | Med Malpractice | ☐ 444 Welfare | Property 21 USC | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product | ☐ 365 Personal Injury- | ☐ 445 American with | 881 | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization | Liability | Product Liability | Disabilities - | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal | Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW |
| ☐ 893 Environmental Matters | REAL PROPERTY | Injury Product | ☐ 446 American with | ☐ 650 Airline Regs | (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | Liability | Disabilities - | ☐ 660 Occupational | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | Other | Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- | ☐ 230 Rent Lease & Ejectment | | ☐ 440 Other Civil | ☐ 690 Other | FEDERAL TAX SUITS |
| nation Under Equal | ☐ 240 Torts to Land | | Rights | | ☐ 870 Taxes (U.S. Plaintiff |
| Access to Justice | ☐ 245 Tort Product Liability | | | | or Defendant) |
| ☐ 950 Constitutionality of | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 |
| State Statutes | | | | | USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: _____   **CV11 02246**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑No  ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
HIGHLAND PLASTICS, INC. - San Bernardino

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐  Check here if the U.S. government, its agencies or employees is a named defendant.
SORENSEN RESEARCH & DEVELOPMENT TRUST -San Diego

**List the California County,** or State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.
Los Angeles

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____  Date _____03/16/2011_____

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |